875 F.2d 863
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Andy DYER, Petitioner-Appellant,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent-Appellee.
 No. 88-3456.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1989.
 
 Before KEITH, KENNEDY, and RYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioner, Andy Dyer ("Dyer"), appeals from the decision and order of the Benefits Review Board ("the Board"), denying his claim under the Black Lung Benefits Act, as amended, 30 U.S.C. Sec. 901-945 ("the Act"). For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 On August 19, 1976, Dyer filed a claim for black lung disability benefits. After his claim was administratively denied, Dyer requested a formal hearing before an Administrative Law Judge ("ALJ").
 
 
 3
 The ALJ heard Dyer's case on June 29, 1983. Dyer testified and presented Social Security records to substantiate his alleged ten years of coal mine employment. Respondent, the Director, Office of Workers' Compensation Programs, ("the Director"), disputed Dyer's methods of computing the duration of his employment as a miner. After considering the evidence of record, the ALJ determined that Dyer had proven fewer than ten years of coal mine employment. In addition, the ALJ found that Dyer's application for benefits was filed prior to the effective date of 20 C.F.R. Sec. 718.2. Thus, the ALJ reviewed Dyer's claim for benefits under 20 C.F.R. Sec. 410.414.[1]
 
 
 4
 The ALJ examined Dyer's medical records and found that his X-ray results were insufficient to establish pneumoconiosis under 20 C.F.R. Sec. 410.414(a). The ALJ next considered whether pneumoconiosis was demonstrated by other relevant evidence of record, pursuant to 20 C.F.R. Sec. 410.414(c). After reviewing Dyer's pulmonary function study [FEV1 : 2.75] and his blood gas study [O2 : 85], the ALJ found that both study results exceeded the standards for establishing disability under Part 410. The ALJ finally considered a medical report submitted on October 27, 1976, by Dr. Kenneth W. Smith. Relying on Dyer's X-ray results, ventilatory study, and blood gas study, Dr. Smith diagnosed him as suffering from questionable pulmonary emphysema related to dust exposure during coal mine employment. Dr. Smith concluded, however, that Dyer had no ventilatory defect and that his pulmonary condition did not cause much restriction on his activities. Thus, the ALJ concluded: first, that Dyer was not totally disabled by any respiratory or pulmonary condition; and second, that Dyer had failed to sustain his burden of proving he suffered from pneumoconiosis pursuant to Part 410.
 
 
 5
 On May 31, 1984, the ALJ issued a decision and order denying Dyer's claim to black lung disability benefits. Dyer then appealed the ALJ's decision to the Board.
 
 
 6
 In an unpublished decision and order dated May 31, 1984, the Board affirmed the decision of the ALJ denying Dyer's claim for benefits. The Board found no error in the ALJ's determination that Dyer failed to establish ten years of qualifying coal mine employment and held that Dyer was not entitled to have his claim reviewed under 20 C.F.R. Sec. 727.203(a).[2] The Board then affirmed the ALJ's findings that Dyer's X-ray evidence did not establish the presence of pneumoconiosis, and that the pulmonary function and blood gas studies were non-qualifying under Part 410. The Board also found no error in the ALJ's determination that Dyer failed to establish the existence of pneumoconiosis. Finally, the Board concluded that the ALJ's denial of benefits was in accord with the Act and supported by substantial evidence.
 
 
 7
 Dyer petitioned this court for review of the Board's decision on May 26, 1988.
 
 II.
 
 8
 In Welch v. Benefits Review Bd., 808 F.2d 443 (6th Cir.1986), we stated that:
 
 
 9
 This court has a limited scope of review over the decisions of the Benefits Review Board. The Board itself may set aside an administrative law judge's findings of fact and conclusions of law only if they are not supported by substantial evidence, or not in accordance with law. Our scope of review is limited to scrutinizing Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations. Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1116 (6th Cir.1984), cert. denied, 471 U.S. 1116 (1985).
 
 
 10
 Welch, 808 F.2d at 445. Thus, our review in this case is limited to examining the ALJ's decision to determine whether it is consistent with the Act and "supported by substantial evidence in the record considered as a whole." 33 U.S.C. Sec. 921(b)(3). See Wardman v. Pittsburg & Midway Coal Min. Co., 839 F.2d 257, 258 (6th Cir.1988).
 
 
 11
 The Black Lung Benefits Act was intended to "provide benefits ... to coal miners who are totally disabled due to pneumoconiosis." 30 U.S.C. Sec. 901(a). Under the Act, pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. Sec. 902(b). A miner is deemed totally disabled when "pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine." 30 U.S.C. Sec. 902(f)(1)(A).
 
 
 12
 If a miner has engaged in coal mine employment for at least ten years and meets one or more of the Part 727 medical requirements, then "he will be presumed to be totally disabled due to pneumoconiosis." 20 C.F.R. Sec. 727.203(a). If a miner cannot sustain the presumption of total disability under Part 727, then he must affirmatively prove that he is totally disabled under Part 410, and that his disability results from pneumoconiosis. See 20 C.F.R. Part 410; Martin v. Alabama By-Products Corp., 864 F.2d 1555, 1557 (11th Cir.1989).
 
 III.
 
 13
 Dyer contends that the ALJ erred in finding that he was not engaged in coal mine employment for ten years. Thus, Dyer concludes that his claim to a presumption of eligibility under Part 727 was improperly rejected. The Director responds that substantial evidence supports the ALJ's finding that Dyer was engaged in fewer than ten years of coal mine employment. We, however, do not reach the issue of how long Dyer was engaged in coal mine employment. After considering the record as a whole, we hold, on the grounds that Dyer failed to prove that he meets one or more of the Part 727 medical requirements,[3] that the Board correctly affirmed the decision of the ALJ that Dyer was not entitled to the presumption of 20 C.F.R. Sec. 727.203(a). See Cox v. Benefits Review Bd., 791 F.2d 445 (6th Cir.1986).
 
 
 14
 Dyer also argues that the Director failed to rebut Dyer's claim of an inability to work in the mines or to perform comparative gainful work. Dyer, however, retains the burden to "affirmatively prove that he is totally disabled and that his disability results from pneumoconiosis." Martin, 864 F.2d at 1557; 20 C.F.R. Part 410. See also Farmer v. Mathews, 584 F.2d 796, 798 (6th Cir.1978).
 
 
 15
 The ALJ determined that Dyer's evidence was insufficient to prove an entitlement to black lung disability benefits. First, Dyer's X-ray evidence was interpreted by Dr. Smith as negative for the presence of pneumoconiosis. See 20 C.F.R. Sec. 410.414(a). Second, Dyer's pulmonary function study and blood gas study failed to meet the standards for establishing total disability. See 20 C.F.R. Sec. 410.426; 20 C.F.R. Sec. 410.401-490 (Appendix to Subpart D).[4] See also Grant v. Director, O.W.C.P., 857 F.2d 1102, 1105 (6th Cir.1988). Third, the ALJ considered the well-documented and well-reasoned opinion of Dr. Smith that Dyer's pulmonary condition does not substantially restrict his activities. The ALJ then reasonably concluded that the medical evidence of record does not support a finding that Dyer suffers from a totally disabling respiratory or pulmonary impairment. See 20 C.F.R. Sec. 410.414(c). See also Grant, 857 F.2d at 1105. Thus, in reliance upon substantial evidence and in accord with the Act, the ALJ properly found that Dyer failed to establish the existence of pneumoconiosis.
 
 
 16
 Accordingly, we conclude that the Board correctly affirmed the decision of the ALJ denying black lung disability benefits to Dyer. The decision and order of the Board is AFFIRMED.
 
 
 
 [1]
 20 C.F.R. Sec. 410.414 provides:
 (a) General. A finding of the existence of pneumoconiosis ... [may be made by]:
 (1) Chest roentgenogram (X-ray); or
 (2) Biopsy; or
 (3) Autopsy.
 (b) Presumption relating to respiratory or pulmonary impairment. ... [I]f other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment ..., it may be presumed, in the absence of evidence to the contrary ..., that a miner is totally disabled due to pneumoconiosis....
 * * *
 (3) The provisions of this paragraph shall apply where a miner was employed 15 or more years in one or more of the Nation's underground [or substantially similar] coal mines....
 (c) Other relevant evidence.... [A] finding of total disability due to pneumoconiosis may be made if other relevant evidence establishes the existence of a totally disabling chronic respiratory or pulmonary impairment, and that such impairment arose out of employment in a coal mine. As used in this paragraph, the term "other relevant evidence" includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history....
 
 
 [2]
 20 C.F.R. Sec. 727.203(a) provides:
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, ... if one of the following medical requirements is met:
 (1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis ...;
 (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease ... as demonstrated by values which are equal to or less than [FEV1 : 2.7];
 (3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than [O2 : 70];
 (4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment; ....
 
 
 [3]
 First, Dyer does not contest the ALJ's finding that his X-ray evidence fails to prove that he suffers from pneumoconiosis. Dyer's X-ray evidence also does not meet the requirements of 20 C.F.R. 727.203(a)(1). Second, Dyer's ventilatory study (FEV1 : 2.75] exceeds [FEV1 : 2.7], the highest value which can demonstrate impairment under 20 C.F.R. 727.203(a)(2). Third, Dyer's blood gas study [O2 : 85] also exceeds [O2 : 70], the highest value which can demonstrate impairment under 20 C.F.R. 727.203(a)(3). Finally, Dyer fails to present other medical evidence, under 20 C.F.R. 727.203(a)(4), to prove that he is totally disabled from a pulmonary or respiratory impairment. The only medical report in the record, submitted by Dr. Smith, states that Dyer's condition does not cause much restriction on his activities. Thus, Dyer has failed to meet one or more of the Part 727 medical requirements
 
 
 [4]
 Dyer's ventilatory study [FEV1 : 2.75] exceeds [FEV1 : 1.9], the highest value which can demonstrate impairment under 20 C.F.R. 410.426. In addition, Dyer's blood gas study [O2 : 85] also exceeds [O2 : 65], the highest value which can demonstrate impairment under 20 C.F.R. Sec. 410.401-490 (Appendix to Subpart D)